█ In the Matter of the Claim of EDNA G. PHILLIPS, Respondent, v. SPAULDING BAKERIES, INC., et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— The board could properly find that the accident occurred within the time and space limits of decedent's employment, as was established by the testimony of the employer's plant manager, and, more particularly, that decedent went to the railroad siding in performance of a specific duty to check a car there. Thus there became operative the presumption of compensable accident and that against suicide. (Workmen's Compensation Law, § 21, subds. 1, 3.) The board was not required, of course, to credit the testimony of the engineer and fireman of the locomotive which struck decedent; and was well within the area

of decision committed to it when it specifically rejected that evidence and held that the presumption against suicide had not been overcome. Further, upon analysis of the record without recourse to the presumptions, it is clear that the evidence was susceptible of conflicting inferences and, consequently, that the board was not bound to adopt those pointing to suicide. (*Matter of Wetterauw* v. *Japan Airlines,* 11 N Y 2d 983; *Matter of Mengele* v. *Liebmann Breweries,* 11 N Y 2d 986.) Decision and award affirmed, with costs to the Workmen's Compensation Board. Bergan, P. J., Gibson, Herlihy and Taylor, JJ., concur; Reynolds, J., dissents and votes to reverse in the following memorandum: Decedent, aged 56, who had been employed by the employer herein for 28 years and who at the time of his demise was office manager of a bakery in Middletown, N. Y., was killed at 5:42 P.M., on May 21, 1959 when he was struck by an Erie Railroad passenger train. The alleged accident occurred as the passenger train passed in an easterly direction on a track about 12 feet in distance from a siding at the rear of the employer's plant. Appellants contend that there is no basis in the record for the board's determination that the fatal accident arose out of and in the course of decedent's employment and that the statutory presumption of subdivision 3 of section 21 of the Workmen's Compensation Law against suicide had not been overcome. The engineer, seated on the right side of the cab, testified that at the time of the accident it was daylight and the weather was clear and bright and that as the train crossed a road just prior to the point of impact he blew the regular crossing warning. He further testified that as the train proceeded along at 40 miles per hour he suddenly saw a man leap from the east end of a boxcar, which was sitting on the siding at the rear of the employer's bakery, directly into the path of the oncoming train. At this point the train was about 50-60 feet from the point of impact and despite prompt application of the brakes impact could not be avoided. The engineer testified that the man's hands and arms were extended as if he were diving but he could not state with certainty if decedent fell, stumbled, tripped or jumped. The fireman, however, testified that decedent threw himself in front of the engine. He stated and maintained under cross-examination that decedent did not stumble but looked at the train, ran a couple of steps and made a headlong dive across the track with his entire body in the air as if diving into water. The record also indicates that a physician whom decedent had been consulting for nervous tension during the six weeks prior to his death had recommended he take a leave of absence from his job and that decedent had been taking tranquilizers for a period of two years prior to consulting the physician. Decedent had resigned his position on May 17, 1959, just four days prior to his demise, effective June 13, 1959. The plant manager testified he did so because "the pressure was too great where he was", but his wife gave as a reason that since their children were no longer in school, they were no longer financially dependent on decedent's job and his resignation would enable them to spend more time toegther and perhaps go into business together. The board takes the position that the presumption was not overcome by "substantial evidence" since decedent was at a point where his customary activities would normally place him and it could reasonably be inferred that in circling the boxcar he could have tripped and fallen in front of the train. This, of course, is sheer conjecture in view of the testimony of the engineer and fireman. Similarly, the board's conclusion that this testimony did not constitute substantial evidence to rebut the presumption because "What they saw could certainly have been distorted by the fact that the scene was being viewed through the windshield of the cab and the train was traveling some 40 miles per hour" is purely speculative especially in view of the clear visibility and 12-foot space between the boxcar and the track. On motivation or suicidal tendency in this case we

have the background of nervous tension, the taking of tranquilizers for a period of two years, and a resignation from his position (" because the pressure was too great ") just four days before his demise which was not present in *Matter of Wetterauw* v. *Japan Airlines* (11 N Y 2d 983). The decision and award should be reversed and the claim dismissed.